**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| MELTECH CORPORATION, <br>     Plaintiff, <br><br> v. <br><br> AUSTIN MOHAWK & CO., INC., <br><br> and <br><br> BEECHGROVE CONSTRUCTION, INC., <br>     Defendants / Third Party Plaintiffs, <br><br> v. <br><br> ROBERT WHITE CONSTRUCTION, <br>     Third Party Defendant. | Civil Action No. 11-cv-160-AW |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending before the Court are Third Party Defendant Robert White Construction (Robert White)'s Motion for Partial Summary Judgment, Doc. No. 53, Defendants and Third Party Plaintiffs Austin Mohawk & Co., Inc. (Austin Mohawk) and Beechgrove Construction, Inc. (Beechgrove)'s Motion for Summary Judgment, Doc. No. 54, and Plaintiff Meltech Corporation (Meltech)'s Cross-Motion for Summary Judgment, Doc. No. 55. The Court has reviewed the motion papers and exhibits and concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the following reasons, the Court will grant summary judgment to Meltech on its breach of contract and indemnification claims against Beechgrove. Summary judgment will be granted to Beechgrove on Meltech's negligence and negligent misrepresentation claims. Austin Mohawk is entitled to summary judgment on all claims against it and will be dismissed from this

action.  Summary judgment will be granted to Beechgrove on its contractual indemnification claim against Robert White, and Beechgrove will be entitled to recover all sums for which it may be adjudged liable to Meltech.  Beechgrove will also be entitled to recover from Robert White pre-judgment interest and reasonable attorneys' fees and costs in defending the action brought against it by Meltech.  Finally, Meltech's Motion to Strike the affidavit of Terry Lane, Doc. No. 64, will be denied as moot, Austin Mohawk and Beechgrove's Motion to Strike Meltech's request for summary judgment on its claim for direct damages, Doc. No. 65, will be granted, and Robert White's Motion to Strike Meltech's request for summary judgment on its claim for direct damages, Doc. No. 66, will be granted.

## I.    FACTUAL AND PROCEDURAL HISTORY

This case arises out of a construction site accident on August 31, 2009, when a steel beam fell and killed Ronald Halferty, an employee of Robert White Construction (Robert White).

Plaintiff Meltech Corporation (Meltech) was a general contractor to the Naval Facilities Engineering Command (NAVFAC)[1] to build two guard stations—Webster Gate and Pax Gate One—at the Naval Air Station Patuxent River.  Meltech entered into two subcontracts with Defendants and Third Party Plaintiffs Austin Mohawk & Co., Inc. (Austin Mohawk) and Beechgrove Construction, Inc. (Beechgrove).  Although they are independent companies, Austin Mohawk and Beechgrove have some of the same corporate officers and generally work in tandem, Austin Mohawk as the supplier of canopies and Beechgrove as the installer.

The Beechgrove subcontract provided that Beechgrove would install the steel canopy of the Pax Gate One guard station.  Specifically, Beechgrove "agree[d] to commence [its] work herein described upon notification by [Meltech], and to perform and complete such work . . . of

---

[1] The parties also refer to NAVFAC as the Department of the Navy, and the Court will use the terms interchangeably.

[Meltech] in accordance with [Meltech]'s schedule.  This shall include all work necessary or incidental to complete the Single Bottom Flat Deck Canopy."  It also stated, under "Name(s) of any immediate subcontractors, if any," "To Be Determined. To be assigned 2 weeks before scheduled installation."

The Austin Mohawk subcontract provided that Austin Mohawk was responsible for the supply and delivery of materials, as it specified "Deliver Only.  Offload and Install by Beechgrove Construction, Inc."  It further specified that Austin Mohawk would not be doing any on site work.  Both the Beechgrove and Austin Mohawk subcontracts contained an identical indemnification provision, which provided:

> To the fullest extent permitted by law, [Austin Mohawk / Beechgrove] shall indemnify and hold harmless [Department of the Navy], and [Meltech] from all damages, losses, or expenses, including attorney fees from any claims or damages for bodily injury, sickness, disease or death, or from claims for damages to tangible property, other than the work itself.  This indemnification shall extend to all claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in part or whole by any negligent act or omission of [Austin Mohawk / Beechgrove] or any of its agents, employee(s) or Subcontractors.  This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified.

When Beechgrove was awarded the subcontract by Meltech, it developed a lift plan for installation of the canopy at Webster Gate.  The lift plan was subsequently revised by Meltech based in part on Navy requirements; for example, Meltech determined that a lull would have to be used for the lift rather than a crane.  Ultimately, the revised lift plan for Webster Gate was adopted for Pax Gate One, with variations to account for the differences in material size.  None of the lift plans explicitly mentioned the use of padding or softeners in the sling that would be attached to the lull and lift the steel materials.

On August 25, 2009, Beechgrove entered into a subcontract with Robert White for the installation of the canopy at Pax Gate 1.  Specifically, the Robert White subcontract provided

that "[r]esponsibility for all aspects of the installation shall be solely that of [Robert White], including, but not limited to, the provision of transportation to the job site, furnishing of all tools and equipment necessary to perform the installation services, and the provision of all necessary skilled labor, all of which shall be provided at [Robert White]'s expense." Furthermore, Robert White agreed "to indemnify and hold harmless [Beechgrove] for any act, or failure to act, of [Robert White] in connection with this Agreement that may cause [Beechgrove] to suffer damages as a result thereof." The parties also agreed that Robert White "is and shall remain an independent contractor in the performance of services hereunder."

At the time of execution of the Robert White subcontract and through the day of the accident, Tom Peters was Beechgrove's only employee. On the morning of August 25, 2009, six days before the accident and the same day Beechgrove subcontracted with Robert White, Peters notified Meltech via e-mail that it had a subcontractor for installation of the canopy. Peters supplied, and Meltech confirmed receipt of, security clearance forms for various employees of Robert White.

On August 31, 2009, the night of the accident, no Beechgrove or Austin Mohawk employees were present at the construction site. Those present included James McTernan of Meltech, in his capacity as Site Safety and Health Officer, and Robert White, Jr. of Robert White Construction. Three lifts were to be performed in the erection of the steel canopy, the last of which resulted in the beam falling on Mr. Halferty. Employees of Robert White Construction supplied and selected the sling that would be used in the lifts, failed to inspect the sling, and attached it to the lull without padding or softeners. Robert White, Jr. was operating the lull and lifting the steel beam when the sling to which the beam was secured failed and the beam fell. White acknowledged that he alone determined how the beam would be lifted and that no one else

had any input on this part of the project. White also acknowledged that he was the last person who could have prevented the accident.

As a result of the accident, the Department of the Navy issued a stop work order on September 1, 2009. An investigation by the Occupational Safety and Health Administration (OSHA) was initiated and on September 21, 2009, as part of that investigation, OSHA cited White for using a defective sling and for failure to use padding or softeners in the sling. Specifically, the OSHA report noted that "the eyes of the sling were not protected from sharp edges on the tine of the fork truck," and that during hoisting of the steel beam, "one of the synthetic sling eyes broke causing the beam to fall and crush a worker." OSHA also concluded:

> There was obvious and existing and new damage to the synthetic sling as observed by the CSHO. CSHO learned from the employee operating a tag line for the beam that when the beam reached near the top of the column it began to sway left and right. This sway could have caused the eyes of the sling to work back and forth on the edge of the fork truck tine, which caused the eye to tear/rip. There were cuts in the eye of the sling, in the same location that the break occurred [sic] on the other eye. This would have increased the risk of sling failure. The break on the eye of the sling was measured and it was the exact width dimension of the tine on the fork truck. The other eye on the sling has damage on the inside of the eye as the dimension of the tine on the fork truck.

The OSHA report further stated:

> Employer Knowledge: The owner of the company [White] was acting as crew leader and owned all the slings that were located on his truck. The owner told a laborer to fetch a sling from the truck and use it to rig the steel beam. The owner was operating the fork truck that was used to lift the beam into place.
>
> Comments (Employer, Employee, Closing Conference): The owner stated he had never used padding or a softener for slings.
> …
> It is industry practice to install padding/softeners on sharp edges for materials that going [sic] to be lifted by slings.

Meltech asserts four causes of action against Defendants Austin Mohawk and Beechgrove: breach of contract, negligent misrepresentation, negligence, and indemnification.

Meltech claims that it is entitled to damages of $15,000,000, including both direct losses and lost profits. Austin Mohawk and Beechgrove filed a Third Party Complaint against Robert White, claiming that they are entitled to recover indemnity for any sums which may be awarded in favor of Meltech in its claims against Austin Mohawk and Beechgrove. Meltech moves for summary judgment as to liability for all of its claims against Austin Mohawk and Beechgrove. Austin Mohawk and Beechgrove move for summary judgment on Meltech's claims against them, as well as for their claims for indemnity against Robert White to the extent they are held liable to Meltech. Robert White also moves for summary judgment on Austin Mohawk and Beechgrove's indemnity claims against it.

## II.    STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Okoli v. City of Balt.*, 648 F.3d 216, 231 (4th Cir. 2011) (quoting *Anderson*, 477 U.S. at 255).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

presents a genuine issue "if, after reviewing the record as a whole . . . a reasonable jury could

return a verdict for [the non-moving party]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d

954, 959 (4th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).  Although the Court should believe

the evidence of the nonmoving party and draw all justifiable inferences in his favor, a

nonmoving party cannot create a genuine dispute of material fact "through mere speculation or

the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Furthermore, "a nonmovant cannot defeat summary judgment with merely a scintilla of

evidence." *American Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009).

## III.   ANALYSIS

### A.   Claims against Austin Mohawk

Meltech asserts that Austin Mohawk is liable for breach of contract, negligent

misrepresentation, negligence, and indemnification.  Austin Mohawk is entitled to summary

judgment on all of these claims.

First, with respect to the breach of contract claim, Meltech has failed to identify any

breach on the part of Austin Mohawk.  The subcontract required Austin Mohawk only to supply

and deliver the canopy materials, and specified that it would be doing no on site work.  Doc. No.

12-2 at 1, 5.[2]  It further specified that Beechgrove would be responsible for offload of the

materials and installation.  *Id.* at 1.  Austin Mohawk satisfactorily performed its supply and

delivery obligations.  There is no evidence that the canopy materials were defective in any way.

Accordingly, Austin Mohawk is entitled to summary judgment on Meltech's breach of contract

claim.

---

[2] Even Meltech's employees acknowledged Austin Mohawk's limited role.  Meltech's Project Manager stated that
the difference between Austin Mohawk and Beechgrove is that "Austin Mohawk supplies the material, Beechgrove
is responsible for the installation . . . ."  Doc. No. 54 Ex. C, Demma Dep. 58:8-10.  Meltech's Chief Estimator also
acknowledged that Austin Mohawk's only role in the project was to deliver materials.  Doc. No. 54 Ex. J, Rossi
Dep. 65:6-14.

Second, Meltech alleges that Austin Mohawk had a duty of care to accurately represent the status of the subcontractors and employees to Meltech and that Austin Mohawk made negligent misrepresentations to Meltech concerning the status of certain Robert White employees. Doc. No. 12 ¶¶ 34-35. To succeed on a negligent misrepresentation claim, a plaintiff must establish that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 (Md. 1982). Austin Mohawk is entitled to summary judgment on this claim because there is no evidence that it made any false statements to Meltech regarding Robert White Construction or its employees. This is logical given that Austin Mohawk had no contractual relationship with Robert White and was not on site at the time of the accident. As discussed above, Austin Mohawk's role in the Pax Gate One project was limited to supplying and delivering the canopy materials. The evidence establishes that Austin Mohawk satisfactorily performed its obligations. Therefore, the Court will grant summary judgment to Austin Mohawk on Meltech's negligent misrepresentation claim.[3]

 For similar reasons, Austin Mohawk is entitled to summary judgment on Meltech's negligence claim. Meltech alleges that Austin Mohawk had a duty to conform to industry standards in the securing and lifting of the beam, and that its breach created an unreasonable risk

---

[3] Meltech claims in its Cross-Motion that the August 25 e-mail from Tom Peters to Monique Whitley at Meltech "clearly shows" that "an official at Austin Mohawk, a few days prior to the accident, represented to [Meltech] that it and its subcontractor, which was Beechgrove under the contracts, would be 'installing a canopy.'" Doc. No. 55 at 7. This is not a reasonable reading of the August 25 e-mail. Although Peters apparently had an Austin Mohawk e-mail address, it is not disputed that he was Beechgrove's only employee, and it was Beechgrove's subcontractor to which he was referring. *See* Doc. No. 54 Ex. K, Millet Dep. 14:16-19. Given the facts in this case, it would make no sense for anyone at Meltech to believe that Beechgrove was acting as Austin Mohawk's subcontractor.

of death or injury.  Doc. No. 12 ¶¶ 40-41.  As discussed, Austin Mohawk's contractual duties were limited to delivery and supply, and the subcontract expressly provided that it would do no on site work.  It is undisputed that Austin Mohawk employees were not present at the worksite on the day of the accident.

Meltech cites to an Austin Mohawk document that sets forth guidelines for cranes, hoists, and rigging safety, and alleges that it failed to enforce these guidelines in overseeing the installation.  *See* Doc. No. 55 Ex. 42.  Not only does this document post-date the accident, but Meltech has failed to present competent evidence that Austin Mohawk had any role with respect to the canopy *installation* at Pax Gate One.  According to deposition testimony, Tom Teeter of Austin Mohawk had discussions with Meltech's Charles Rossi regarding the use of lulls.  *See* Doc. No. 56 Ex. B, Rossi Dep. 170:17-171:13, 183:1-8.  However, it is not disputed that it was NAVFAC and Meltech's decision, not Austin Mohawk's, to use a lull rather than a crane.  Doc. No. 55 Ex. 45, Millet Dep. 103:9-14, 104:5-7; Doc. No. 59 Ex. D.  Accordingly, Austin Mohawk is entitled to summary judgment on Meltech's negligence claim.[4]

Finally, Meltech claims that per the terms of the subcontract, Austin Mohawk agreed to indemnify it for all damages resulting from its negligence.  Doc. No. 12 ¶¶ 44-45.  For the reasons stated above, there is no evidence that Austin Mohawk breached its contract with Meltech or was negligent with respect to the installation of the canopy at Pax Gate One.  Austin Mohawk is therefore entitled to summary judgment on Meltech's indemnification claim, and Austin Mohawk will be dismissed from this action.

---

[4] Meltech also cites to a document with Austin Mohawk letterhead which addresses configurations and lifting capacities for nylon straps.  *See* Doc. No. 55 Ex. 26.  However, Meltech fails to articulate any connection between this document and the accident at Pax Gate One.

B.    Claims against Beechgrove

The Court will analyze each of Meltech's claims against Beechgrove—breach of contract, negligent misrepresentation, negligence, and indemnification—in succession.

1.    Breach of Contract

Meltech alleges in its Amended Complaint that Beechgrove was required to perform all work necessary to complete the canopy installation, and the Beechgrove breached the subcontract with Meltech in several ways, including but not limited to hiring White to perform the work and failing to perform the work properly.  Doc. No. 12 ¶¶ 28, 30.

"Maryland courts apply the objective theory of contract interpretation in which an unambiguous contract must be given the effect of its plain meaning in the context in which it was employed and without regard to the parties' subjective intent at the time of formation." *County Comm'rs of Charles Cnty., Md. v. Panda-Brandywine, L.P.*, 663 F. Supp. 2d 424, 428 (D. Md. 2009) (citing *Nova Research, Inc. v. Penske Truck Leasing, Co.,* 952 A.2d 275, 283 (Md. 2008)). A court construing an agreement under the objective test must determine from the language of the contract itself "what a reasonable person in the position of the parties would have meant at the time it was effectuated." *General Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985).  "[T]he clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean." *Id.*

Beechgrove's obligations under the subcontract with Meltech were simple.  Beechgrove "agree[d] to commence [its] work herein described upon notification by [Meltech], and to perform and complete such work . . . of [Meltech] in accordance with [Meltech]'s schedule.  This shall include all work necessary or incidental to complete the Single Bottom Flat Deck Canopy." Doc. No. 12-1 at 1.  The undisputed evidence in this case demonstrates that Beechgrove

breached its obligation under the subcontract to perform the work necessary to complete installation of the canopy in accordance with Meltech's schedule. Beechgrove cannot avoid these obligations under the contract with Meltech merely because the contract contemplated that Beechgrove could hire its own subcontractors. The plain language of the contract does not give Beechgrove the ability to transfer its contractual duties to complete the project in a timely and workmanlike manner. Accordingly, Meltech is entitled to summary judgment on its breach of contract claim against Beechgrove.

> ### 2. Negligent Misrepresentation

Meltech alleges that Beechgrove had a duty of care to accurately represent the status of the subcontractors and employees to Meltech and that it made negligent misrepresentations to Meltech concerning the status of certain Robert White employees. Doc. No. 12 ¶¶ 34-35. Beechgrove is entitled to summary judgment on the negligent misrepresentation claim because there is no evidence that Beechgrove ever made a false statement concerning its retention of Robert White Construction. Indeed, the subcontract with Meltech expressly contemplated Beechgrove's use of subcontractors, and Beechgrove provided written notice to Meltech that it had retained Robert White for canopy installation. *See* Doc. No. 54 Ex. L. Summary judgment will therefore be granted to Beechgrove on Meltech's negligent misrepresentation claim.

> ### 3. Negligence

Meltech asserts that Beechgrove had a duty to conform to industry standards in the securing and lifting of the beam, that it breached this duty, and that this breach resulted in the fatal accident and delay in completion of the project.

The parties seem to agree that resolution of the cross-motions for summary judgment on Meltech's negligence claim turns largely on whether Beechgrove controlled the actions of Robert

White Construction, and is therefore liable under a theory of actual fault. Generally, under Maryland law an "employer of an independent contractor is not liable for the negligence of the contractor or his employees." *Appiah v. Hall*, 7 A.3d 536, 551 (Md. 2010) (quoting *Rowley v. Mayor and City Council of Balt.*, 505 A.2d 494, 496 (Md. 1986)). Fault will typically not lie where the independent contractor "is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done." *Appiah*, 7 A.3d at 554 (quoting *Gallagher's Estate v. Battle*, 122 A.2d 93, 97 (Md. 1959)). "When an employer has retained control of the details of the work, however, liability is permitted under a theory of actual fault." *Appiah*, 7 A.3d at 554. General control is insufficient to establish liability. Indeed, the retention of control doctrine only applies if

> the employer has retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* at 554. The *Appiah* court characterized these principles as "as requiring plaintiffs to demonstrate that the employer not only has retained control over the operative detail and methods of the work but also that this control extends to *the very thing from which the injury arose*." *Id.* at 555 (emphasis in original) (internal quotations omitted).

There is no genuine issue of material fact that Beechgrove did not retain control over the operative details of Robert White's work. Beechgrove's contract with Robert White provided that "[r]esponsibility for all aspects of the installation shall be solely that of [Robert White], including, but not limited to, the provision of transportation to the job site, furnishing of all tools

and equipment necessary to perform the installation services, and the provision of all necessary skilled labor, all of which shall be provided at [Robert White]'s expense." Doc. No. 54 Ex. G. It is undisputed that Beechgrove was not present at the site at the time of accident. Employees of Robert White Construction supplied and selected the sling that would be used in the lifts. Doc. No. 59 Ex. E, White Dep. 106:12-15, 119:2-6. The employees did not inspect the sling prior to the lift, despite that being their customary practice. Doc. No. 59 Ex. E, White Dep. at 52:17-53:20, 106:11-17. Robert White employees attached the sling, without padding or softeners, on the lull, and put the sling around the beam before the third and fatal lift. Doc. No. 59 Ex. F, McTernan Dep. 77:3-9. Robert White, Jr. was operating the lull and lifting the steel beam when the sling to which the beam was secured failed and the beam fell. Doc. No. 54 Ex. I, McTernan Dep. at 83:16-16. White acknowledged that he alone determined how the beam would be lifted and that no one else had any input on this part of the project. Doc. No. 54 Ex. A, White Dep. 199:7-20. White also admitted that he was the last person who could have prevented the accident. *Id.* at 123:15-17. It is also undisputed that the cause of the accident, as determined by OSHA, was the use of a defective sling and the failure to use padding or softeners. *See* Doc. No. 55 Ex. 33.

Meltech asserts that Beechgrove's negligence is evidenced by its development of the lift plan. An early version of Beechgrove's lift plan for the Webster Gate project specified that a crane or lull could be used and that the steel materials were to be lifted by nylon straps. *See* Doc. No. 56 Ex. H, at AUSTIN00318-319. Beechgrove's plan did not mention the use of padding or softeners, an omission that Meltech claims was negligent. However, the overwhelming evidence outlined above demonstrates that Robert White Construction's actions and omissions were responsible for the accident. Even if the Court accepted that Beechgrove should have specified

the use of padding or softeners in its lift plan, there is no evidence before the Court that the Beechgrove lift plan's failure to mention padding or softeners contributed to or in any way caused the August 31, 2009 accident.

Indeed, any evidence linking the Beechgrove lift plan to Robert White's negligent selection of equipment is attenuated at best. Even Meltech acknowledges that Beechgrove's role in the lift plan was largely limited to the order in which the various materials were to be installed, not the type of equipment to be used. *See* Doc. No. 55 at 26-27 (citing Doc. No. 55 Ex. 46, Millet Dep. at 102, 104). Furthermore, Beechgrove's version was subsequently revised by Meltech and submitted to and approved by the Navy. *See, e.g.*, Doc. No. 56 Ex. K, Demma Dep. 140:13-21; Doc. No. 56 Ex. H at AUSTIN00309. With respect to equipment, Meltech decided that a lull, rather than a crane, should be used due to Federal Aviation Administration concerns. *See* Doc. No. 59 Ex. D. The revised lift plan, complete with Meltech letterhead, provided more expansive detail as to the type of equipment that could be used for the canopy installation. Doc. No. 56 Ex. H at AUSTIN00310-317. That lift plan was subsequently adopted for the Pax Gate One project, with variations to account for differences in materials. Doc. No. 56 Ex. K, Demma Dep. 144:7-10. Plainly, Beechgrove's initial lift plan for the Webster Gate project does not evidence control over the equipment Robert White used for the Pax Gate One project.

Meltech cites other evidence purportedly showing that Beechgrove influenced or controlled the equipment used by Robert White. White testified in his deposition, for example, that Beechgrove had come to the worksite and instructed him to use certain safety equipment. Doc. No. 55 Ex. 24, White Dep. at 69:6-11. White also testified that Tom Peters of Beechgrove told him he had to use a forklift. Doc. No. 55 Ex. 25, White Dep. at 179:7-18. As with the lift plan, however, none of this evidence suggests that Beechgrove controlled the operative details of

Robert White's work, much less that Beechgrove controlled the very thing from which the injury arose—the use of a defective sling and the failure to use softeners or padding. The fact that Beechgrove had some general input on Robert White's work does not make it liable for its subcontractor's negligence.

Meltech also argues that Beechgrove was negligent because it failed to provide a copy of its Safety Policy to Robert White. Doc. No. 55 at 24-25. Again, Meltech fails to articulate how Beechgrove's failure to provide the Safety Policy to Robert White caused the accident. As discussed above, the overwhelming evidence in this case demonstrates that it was the acts and omissions of Robert White, and Robert White alone, which caused the fatal accident. *See, e.g.*, Doc. No. 55 Ex. 33, OSHA Report (Sept. 21, 2009). In short, Robert White Construction was responsible for the selection of equipment that led to the fatal accident, and Beechgrove had no control over this aspect of Robert White's work. Accordingly, Beechgrove is entitled to summary judgment on Meltech's negligence claim.

### 4. Indemnification and Damages

The contract between Beechgrove and Meltech included the following indemnification provision:

> To the fullest extent permitted by law, [Beechgrove] shall indemnify and hold harmless [Department of the Navy], and [Meltech] from *all damages, losses, or expenses*, including attorney fees from any claims or damages for bodily injury, sickness, disease or death, or from claims for damages to tangible property, other than the work itself. This indemnification *shall extend to all claims resulting from performance of this Subcontract* and shall apply only to the extent that the claim or loss is caused in part or whole by any *negligent act or omission* of [Beechgrove] or any of its agents, employee(s) or *Subcontractors*. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified.

Doc. No. 12-1 at 2 (emphasis added). The plain language of the indemnification provision entitles Meltech to recover from Beechgrove all damages it sustained as a result of Robert

White's negligence. It is not seriously disputed in this case that Robert White was negligent in installing the canopy. *See, e.g.*, Doc. No. 55 Ex. 33, OSHA Report (Sept. 21, 2009); *see also* OSHA Regulations, 29 C.F.R. 1926.251(c)(9) ("Slings shall be padded or protected from the sharp edges of their loads."). It is also not disputed that the fatal accident that resulted from Robert White's negligence led to significant delays in completing the project. Doc. No. 55 Ex. 32, NAVFAC Stop Order; *see also* Doc. No. 12 ¶ 17; Doc. No. 55 Ex. 37, Demchik Report. Even Beechgrove's expert acknowledged in his expert report that he agreed with OSHA's findings regarding Robert White's responsibility for the accident and failure to comply with OSHA regulations. *See* Doc. No. 55 Ex. 31, Lane Report at 1. Meltech is therefore entitled to summary judgment on its claim for indemnification.

Beechgrove maintains, however, that it is entitled to summary judgment on Meltech's damages claims. Specifically, Beechgrove alleges that there is no evidence that the fatal accident resulted in lost business with the government and that claimed damages for loss of future business are too speculative to be recoverable.

A plaintiff can recover lost profits arising from a breach of contract where (1) the plaintiff shows that defendant's breach of contract was the cause of the loss; (2) the defendant could have reasonably foreseen at the time the contract was executed that a loss of profits would be a probable result of the breach; and (3) the lost profits can be proved with reasonably certainty. *M & R Contractors & Builders, Inc. v. Michael*, 138 A.2d 350, 353-55 (Md. 1958). Reasonable certainty does not require the plaintiff to determine an exact pecuniary amount; rather, the evidence must "lay some foundation for the fact finder to make a fair and reasonable estimate of the amount of damage." *Della Ratta, Inc. v. American Better Cmty. Developers, Inc.*,

380 A.2d 627, 641 (Md. Ct. Spec. App. 1977). The Court of Special Appeals in *Della Ratta* specified the type of proof necessary to sustain a lost damages claim:

> The rule that uncertainty as to the amount of the damage will not prevent a recovery does not mean that there need be no proof of the amount of the damage. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances.

*Id.* (citations omitted). "Whether claimed damages are 'too speculative to be submitted to the jury depends in large measure upon the facts and circumstances of each particular case.'" *Dierker v. Eagle Nat'l Bank*, 888 F. Supp. 2d 645 (D. Md. 2012) (quoting *McAlister v. Carl,* 197 A.2d 140, 146 (Md. 1964)) (footnotes omitted).

Maryland courts have acknowledged that past performance and prior earnings may be considered as evidence to establish lost profits with reasonable certainty. *See, e.g.*, *Macke Co. v. Pizza of Gaithersburg, Inc.*, 270 A.2d 645, 650-51 (Md. 1970); *see also Thomas v. Capital Med. Mgmt. Assocs., LLC*, 985 A.2d 51, 66-67 (Md. Ct. Spec. App. 2009) (upholding damages award based on lay testimony of billing manager where she projected lost profits based on the company's prior collections). Maryland courts have also recognized that evidence of lost contracting opportunities can form the basis of a lost profit claim. *See, e.g.*, *Sergeant Co. v. Clifton Bldg. Corp.*, 423 A.2d 257, 262 (Md. Ct. Spec. App. 1980) (upholding damages award where defendant's breach of loan agreement resulted in third parties rescinding nine separate building contracts to which plaintiff was a party). Furthermore, the Court of Appeals recognized that expert testimony to appraise the value of lost profits may comply with the reasonable certainty rule. *See Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 389 A.2d 887, 906-908 (Md. 1978).

Meltech has presented sufficient evidence in support of its lost profit claims to preclude granting summary judgment to Beechgrove. With respect to causation, Steve Krishack of Meltech and Peter Psaromatis of Vatica testified that Meltech lost contracting opportunities with NAVFAC because of the fatal accident. *See* Doc. No. 55 Ex. 49, Krishack Dep. 127:9-15, 130:2-20; Doc. No. 55 Ex. 50, Psaromatis Dep. 29:1-10. On the other hand, Beechgrove cites the deposition of Karen Williams, a Navy Contracting Officer, who testified that the Navy continued to consider Meltech's bids following the accident and that the Navy's denial of Meltech's bids was not related to the accident. Doc. No. 54 Ex. D, Williams Dep. 27:1-14, 48:1-49:4. Beechgrove also cites deposition testimony from Williams and other witnesses suggesting a record of poor performance, a factor which might have contributed to Meltech's failure to secure contracts following the accident. *See* Doc. No. 54 at 18-20. Accordingly, whether the breach of contract caused lost business opportunities for Meltech is a disputed question of fact for the jury.

Meltech has also presented competent evidence that its lost profits can be calculated with reasonable certainty. The company identified with specificity the number of projects it averaged in previous years and the value of those projects, and attributes the fatal accident to be the cause of at least two lost bids. *See* Doc. No. 55 at 34.[5] Meltech has also submitted a report from its expert Neil Demchick which contains detailed conclusions as to how Meltech lost contracting opportunities as a result of the fatal accident at Pax Gate One. *See* Doc. No. 55 Ex. 37, at 11-17. At this time, Beechgrove has presented no arguments that challenge the particular methodology or conclusions of Mr. Demchick. Accordingly, the Court concludes that there is a genuine issue

---

[5] Meltech's Amended Complaint claimed that its reputation was damaged as a result of the fatal accident. Doc. No. 12 ¶ 24. Austin Mohawk and Beechgrove argue that this claim in damages was deficient because it sounds in defamation law, and there is no evidentiary basis upon which to conclude that Meltech was defamed. *See* Doc. No. 54 at 22. Meltech did not respond to this argument in its briefs. The Court's analysis is therefore limited to lost profits.

of material fact concerning Meltech's entitlement to lost profits, and Beechgrove's motion for summary judgment on this issue will be denied.

C.     <u>Beechgrove's Indemnity Claims against Robert White</u>

Beechgrove's subcontract with Robert White for the canopy installation at Pax Gate One provided that "[r]esponsibility for all aspects of the installation shall be solely that of [Robert White], including, but not limited to, the provision of transportation to the job site, furnishing of all tools and equipment necessary to perform the installation services, and the provision of all necessary skilled labor, all of which shall be provided at [Robert White]'s expense." Doc. No. 54 Ex. G. Robert White agreed to perform the installation "in a timely and workmanlike manner." *Id.* Furthermore, Robert White agreed "to indemnify and hold harmless [Beechgrove] for any act, or failure to act, of [Robert White] in connection with this Agreement that may cause [Beechgrove] to suffer damages as a result thereof." *Id.* The parties agreed that the contract would be construed under the laws of the state of New York. *Id.*

"New York law requires indemnification agreements to be strictly construed; a court cannot find a duty to indemnify absent manifestation of an "unmistakable intention" to indemnify." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003) (quoting *Heimbach v. Metropolitan Transp. Auth.*, 553 N.E.2d 242, 246 (N.Y. 1990)). The terms of the Robert White subcontract are unambiguous, broad and evidence an unmistakable intention to indemnify in the present circumstances. Robert White agreed to indemnify Beechgrove for "any act" in connection with the Agreement that could cause Beechgrove to suffer damages. Meltech's breach of contract claim against Beechgrove stems solely from Robert White's work on the canopy installation. Accordingly, Beechgrove is entitled to summary judgment on its claim for

contractual indemnification against Robert White Construction.[6]  Beechgrove will be entitled to recover all sums for which it may be adjudged liable to Meltech.

Beechgrove will also be entitled to recover prejudgment interest.  The Maryland Court of Appeals has held that "[p]re-judgment interest is allowable as a matter of right when 'the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment . . . .'"  *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001) (quoting *First Va. Bank v. Settles*, 588 A.2d 803, 807 (Md. 1991)).  Indeed, the right to pre-judgment interest "as of course arises under written contracts to pay money on a date certain . . . ."  *Buxton*, 770 A.2d at 165.

Beechgrove is also entitled to recover reasonable attorneys' fees and costs associated with defending the action brought by Meltech.  However, the Court agrees with Robert White that under New York law, Beechgrove's attorneys' fees are limited to amounts incurred by Beechgrove in defending Meltech's claims against it, and do not extend to the costs of bringing the third party action against Robert White.  The Court of Appeals of New York recently held:

> Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

*Hooper Associates, Ltd. v. AGS Computers, Inc.*, 549 N.Y.S.2d 365, 367 (N.Y. 1989); *see also Gotham Partners, L.P. v. High River Ltd. P'ship*, 906 N.Y.S.2d 205 (N.Y. App. Div. 2010) (noting that New York has been "distinctly inhospitable" to claims for attorneys' fees between

---

[6] Beechgrove is only entitled to contractual indemnity from Robert White, and the Court rejects Beechgrove's argument that it is also entitled to common law indemnification under Maryland law.  Implied indemnity "may arise from a special relationship between the parties," while equitable indemnity "may exist between persons liable for a tort."  *Pulte Home Corp. v. Parex, Inc.*, 942 A.2d 722, 730-31 (Md. 2008)."  *see also Hanscome v. Perry*, 542 A.2d 421, 426 (Md. 1988). The Court fails to discern a special relationship between Robert White and Beechgrove that would give rise to an indemnification obligation beyond the express terms of their contract.  Furthermore, the Court found that Beechgrove is entitled to summary judgment on Meltech's negligence and negligent misrepresentation claims, and therefore, Beechgrove is not liable in tort with Robert White.

parties to a contract). The indemnification provision in the Robert White subcontract does not make it unmistakably clear that the parties intended to upset the settled rule.

## IV.      MOTIONS TO STRIKE

Meltech moves in its reply brief that the Court should strike the affidavit of Terry Lane, expert for Austin Mohawk and Beechgrove. *See* Doc. No. 64 at 6-8. Defendants and Third Party Plaintiffs supplied the affidavit in question as an exhibit to their opposition briefs. *See* Doc. No. 59 Ex. H; Doc. No. 60 Ex. F. The affidavit was cited primarily for the proposition that Beechgrove did not breach any standard of care by failing to include in the lift plan a requirement that padding or softeners be used. *See, e.g.*, Doc. No. 59 at 10. However, for the reasons articulated herein, the Court concluded that Beechgrove is entitled to summary judgment on Meltech's negligence claim because there is no genuine issue of material fact that the accident was caused by the acts and omissions of Robert White alone and that the Beechgrove lift plan was not a contributing factor to the accident. The Court did not rely on the Lane affidavit in reaching its conclusions. Accordingly, Meltech's motion will be denied as moot.

In its reply brief, Meltech argued for the first time that it is entitled to summary judgment on its claim for direct damages. *See* Doc. No. 64 at 8. Austin Mohawk, Beechgrove, and Robert White now move to strike this request. Doc. Nos. 65 and 66. Meltech has not responded to these motions to strike. The Court concludes that Meltech failed to properly articulate its direct damages argument in its Cross-Motion for Summary Judgment. Indeed, Meltech's Cross-Motion contained only passing references to direct damages under headings for factual background and facts not in dispute. *See* Doc. No. 55 at 13, 15. Meltech did not specify in its Memorandum the amount of direct damages it was seeking, nor did it set forth a substantive argument as to why it was entitled to summary judgment on direct damages. Meltech's briefing

on damages only addressed its opposition to Austin Mohawk and Beechgrove's argument that they were entitled to summary judgment on Meltech's claim for lost profits. *Id.* at 30-36.

By Order dated February 13, 2013, the Court approved the parties' proposed briefing schedule, which provided that Meltech would file a cross-motion for summary judgment by April 5, 2013. Doc. Nos. 51, 52. The Order further provided that Meltech's reply to oppositions to its cross-motion could not address issues outside its cross-motion or the oppositions thereto. *Id.* Meltech's May 13, 2013 request for summary judgment on direct damages violates the Court's Order and the parties' agreed upon briefing schedule. Accordingly, the Court will grant Defendants' Motion and Robert White's Motion and strike Meltech's request.[7]

## V.    CONCLUSION

For the foregoing reasons, Meltech's Cross-Motion for Summary Judgment will be GRANTED-IN-PART and DENIED-IN-PART, Austin Mohawk and Beechgrove's Motion for Summary Judgment will be GRANTED-IN-PART and DENIED-IN-PART, and Robert White's Motion for Partial Summary Judgment will be GRANTED-IN-PART and DENIED-IN-PART. Furthermore, Meltech's Motion to Strike the affidavit of Terry Lane will be DENIED AS MOOT, and Austin Mohawk and Beechgrove's Motion and Robert White's Motion to Strike Meltech's request for summary judgment on direct damages will be GRANTED. The Court will schedule a trial to determine Meltech's damages for direct losses and for lost profits as a result of Beechgrove's breach of contract. A separate Order will follow.



|     __July 1, 2013___     |     _____/s/_____     |
| Date | Alexander Williams, Jr. |
|      | UNITED STATES DISTRICT JUDGE |

---

[7] Furthermore, it appears to the Court that there is a material factual dispute as to the issue of direct damages. *See* Doc. No. 66-2. Accordingly, the Court would deny Meltech's request for summary judgment on direct damages even if it declined to strike the request.